IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAHI ISSA, | : | |
| Plaintiff, | : | |
| v. | : | Civ. No. 14-168-LPS |
| DELAWARE STATE UNIVERSITY, et al., | : | |
| Defendants. | : | |

Jahi Issa, Wilmington, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

August 11, 2014
Wilmington, Delaware

[signature] 
**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Jahi Issa ("Plaintiff") filed this action alleging discrimination and violations of his constitutional rights pursuant to the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983, 1988, and 2000e-5, *et seq.*, and the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.[1] He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 4) The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2).

## II. BACKGROUND

Plaintiff was employed as an assistant professor of history and Africana studies in the Department of History and Political Science at Delaware State University ("DSU") in Dover, Delaware. He is an African-American who suffers from post-traumatic stress disorder ("PTSD"). Plaintiff alleges that he was a tenured track professor who was considered for promotion to associate professor until he was terminated on August 17, 2012, following a paid administrative leave that began on or around March 2, 2012 after he was notified that DSU was conducting an investigation.[2]

It appears the investigation was the result of Plaintiff's participation in a March 1, 2012 student protest at DSU. Plaintiff alleges that during the protest, he was assaulted by DSU

---

[1] Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] Plaintiff was sent a terminal contract in early April 2012. When DSU decides not to reappoint a faculty member for any reason, it must issue a terminal contract to the faculty member for the following academic year. *See Issa v. American Assoc. of Univ. Professors*, Decision of the Public Employment Relations Board, ULP No. 13-02-887 (Del. PERB Aug. 26, 2013), *aff'd in part and remanded*, PERB Review of Hearing Officer's Decision (Del. PERB Nov. 27, 2013).

1

employees, taken to the Kent General Hospital for treatment and, while hospitalized, arrested by a DSU police officer. Plaintiff was taken to the Dover jail, appeared before the local magistrate, charged with four misdemeanors, and released. (D.I. 2 ¶¶ 49-58)

Prior to the time his employment was terminated, Plaintiff complained of discrimination and had filed a charge of discrimination against DSU with the EEOC on July 8, 2011. He filed a second charge of discrimination for retaliation against DSU on November 8, 2012. Plaintiff alleges Defendants engaged in discriminatory conduct based upon his race, and that he reported ongoing acts of harassment and discrimination to his superiors, but no action was taken. In addition, he alleges retaliation after he advised his superior that he was considering filing an EEOC complaint.

Other than DSU, the defendants are sued in their individual and official capacities. The complaint contains nine counts. Counts I, II, V, VI, and VIII allege violations of 42 U.S.C. § 1983, Count III alleges violations of Title VII,[3] Count IV alleges violations of the ADA, and Counts VII and IX raise supplemental State law claims. More particularly: (1) Count I, against all Defendants, alleges violations of Plaintiff's First and Fourteenth Amendment rights to hold employment without infringement of his First Amendment right to free speech and to petition the government; (2) Count II, against Defendants Harry Williams ("Williams"), Alton Thompson ("Thompson"), Irene Chapman-Hawkins ("Chapman"), Bradley Skelcher ("Skelcher'), and Thomas Preston ("Preston"), alleges Plaintiff's State employment was terminated without due process; (3) Count III, against Williams, Thompson, Chapman, Skelcher, and Preston, alleges retaliation for

---

[3]The complaint refers 42 U.S.C. § 1983 in the retaliation claim. However, in reading the allegations is it evident that Plaintiff claims retaliation for filing a charge of discrimination with the EEOC. "Where there is no basis for a § 1983 claim other than the retaliatory conduct proscribed by Title VII, courts have held that the § 1983 claim cannot stand alone." *Slaughter v. County of Allegheny*, 2013 WL 5491739, at *7 (W.D. Pa. Oct. 1, 2013) (citations omitted). Plaintiff proceeds *pro se*, and therefore, the Court liberally construes Count III as alleging retaliation under Title VII.

2

filing a charge of discrimination with the EEOC; (4) Count IV, against all Defendants, alleges that Plaintiff suffers from PTSD and that he was not provided a reasonable accommodation during the summer of 2011; (5) Count V, against all Defendants, alleges false arrest and false imprisonment in violation of the Fourth and Fourteenth Amendments; (6) Count VI, against all Defendants, alleges malicious prosecution; (7) Count VII, against all Defendants, alleges defamation under State law; (8) Count VIII, against all Defendants, alleges that DSU developed and maintained policies, practices, and/or customs that were the direct and proximate cause of the violations of Plaintiff's constitutional rights; and (9) Count IX, against Williams, Thompson, Chapman, Skelcher, Preston, and Stevenson alleges breach of contract.

### III. LEGAL STANDARDS

This Court must dismiss, at the earliest practicable time, certain *in forma pauperis* actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson v. Rackmill*, 878

3

F.2d 772, 774 (3d Cir. 1989); *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant Plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. When determining whether dismissal is appropriate, the court must take three steps: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

4

## IV. DISCUSSION

### A. Eleventh Amendment

Plaintiff sues DSU as well as all other Defendants in their official capacities. He seeks compensatory damages and injunctive relief.

"Absent a State's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (*per curiam*)). DSU is a "state institution" and an "instrumentality of the State of Delaware for Eleventh Amendment purposes." *McKay v. Delaware State Univ.*, 2000 WL 1481018, at *10 n.28 (D. Del. Sept. 29, 2000) (identifying DSU as a "corporation created and funded by the Delaware General Assembly, whose Board of Trustees is appointed by and includes the Governor"); *see also Carter v. Delaware State Univ.*, 65 F. App'x 397, 398 (3d Cir. Apr. 16, 2003) (noting that plaintiff "concede[d] that the Eleventh Amendment prevents her from suing DSU" for violations of § 1983); *Hurd v. Delaware Sate Univ.*, 2008 WL 4369983, at *3 n.16 (D. Del. Sept. 25, 2008) (holding that plaintiff's suit against DSU fails as a matter of law because it is barred by Eleventh Amendment). In addition, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. Nov. 16, 2009).

The State of Delaware has not waived its immunity from suit in federal court and, although Congress can abrogate a State's sovereign immunity, it did not do so through the enactment of § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. Jan. 11, 2007) (citations omitted). Accordingly, DSU is protected from suit by reason of its Eleventh Amendment immunity. Similarly,

5

Defendants, who are sued in their official capacities, are immune from suit pursuant to the Eleventh Amendment for the § 1983 claims seeking monetary damages.

The Eleventh Amendment, however, permits suits for prospective injunctive relief against state officials acting in violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (internal citations omitted). "Federal courts may not award retrospective relief, for instance money damages or its equivalent, if the State invokes its immunity." *Id.* (citations omitted).

For the above reasons, the Court will dismiss the § 1983 claims against DSU found in Counts I, II, V, and VI by reason of its Eleventh Amendment immunity. The Court will also dismiss the § 1983 claims raised against Defendants in their official capacities to the extent that Plaintiff seeks monetary damages pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

### B. 42 U.S.C. § 1988

To the extent that Plaintiff attempts to states a claim under § 1988, the claim will be dismissed. Section 1988 does not create an independent cause of action. *See Moor v. County of Alameda*, 411 U.S. 693, 702 (1973) (stating § 1988 does not create independent federal cause of action, but complements various acts which do create federal causes of action for violation of federal civil rights). Section 1988 provides that "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." In addition, Plaintiff proceeds *pro se* and, therefore, § 1988 is inapplicable. Therefore, Plaintiff's § 1988 claim will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

## C. Personal Involvement

The complaint names Skelcher and Carl Holmes ("Holmes") as defendants. Skelcher is identified as an associate provost at DSU (D.I. 2 at ¶ 9), and Holmes is identified as the chief of campus police at DSU (*id.* at ¶ 14).

A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978)). In addition, an individual government defendant "in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho*, 423 F.3d at 353 (3d Cir. 2005) (internal quotation marks omitted).

Other than to identify their positions and list them in the complaint, there are no allegations directed towards either Skelcher or Holmes. Accordingly, Skelcher and Holmes will be dismissed as Defendants for failure to state claims against them upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## D. Count I, First Amendment

Count I is raised against all Defendants pursuant to § 1983. It alleges violations of Plaintiff's First and Fourteenth Amendments rights to hold employment without infringement of his First Amendment rights to free speech and to petition the government. Count I is deficiently pled. It is unclear who, among the defendants, had personal involvement in the alleged violation of Plaintiff's constitutional rights and, in particular, whether Meredith, Downes, and Buchwald had any personal involvement. Accordingly, Count I will be dismissed for failure to state a clam upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff will be given leave to amend Count I.

7

### E. Count II, Due Process

At this juncture, Plaintiff has stated what appear to be cognizable § 1983 claims against Williams, Thompson, Chapman-Hawkins, and Preston for violation of Plaintiff's right to due process. As discussed above, there are no allegations against Skelcher and, therefore, the claims raised against him in Count II will be dismissed. Plaintiff will be given leave to amend Count II.

### F. Counts III and IV, Title VII and ADA

Plaintiff raises claims under Title VII and the ADA. Count III, against Williams, Thompson, Chapman, Skelcher, and Preston, alleges retaliation for filing a charge of discrimination with EEOC, and Count IV, against all Defendants, alleges that Plaintiff suffers from PTSD and that he was not provided a reasonable accommodation during the summer of 2011.

The Title VII retaliation claim is only raised against individual defendants. It must be dismissed because Title VII does not permit individual liability for racial discrimination. *See, e.g., Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996) (holding that Title VII does not provide for individual liability). Similarly, individual liability is not available for discrimination claims brought under Title I or Title II of the ADA. *See Koslow v. Commonealth of Pa.*, 302 F.3d 161, 178 (3d Cir. 2002) ("[T]here appears to be no individual liability for damages under Title I of the ADA"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (suggesting in dicta that "individuals are not liable under Titles I and II of the ADA")). Also, the Third Circuit has held that there is individual liability under Title III of the ADA; however, such liability applies only to an individual who owns, leases, or operates a place of public accommodation, making it inapplicable in the instant case. *See Emerson*, 296 F.3d at 189.

Therefore, the Court will dismiss Count III as it is raised solely against individual defendants and will dismiss the ADA claims in Count IV raised against individual defendants as frivolous

8

pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff has adequately alleged an ADA claim against DSU.

### G. Count V, False Arrest and False Imprisonment

Count V, raised pursuant to § 1983 against all Defendants, alleges false arrest and false imprisonment in violation of the Fourth and Fourteenth Amendments. There are no allegations of personal involvement by any named Defendant as to Count V. Accordingly, Count V will be dismissed for failure to state a claim upon which relief may be granted. Plaintiff will be given leave to amend the claim.

### H. Count VI, Malicious Prosecution

Count VI, raised pursuant to § 1983 against all Defendants, alleges malicious prosecution. Plaintiff was arrested and charged with two counts of disorderly conduct, resisting arrest and offensively touching an officer. (D.I. 2 at ¶ 77) The complaint states that the two counts of disorderly conduct were "dropped" but that the other two charges are pending. (*Id.*)

"To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009).

The malicious prosecution claim is frivolous. The complaint does not indicate that any named Defendant initiated the criminal proceeding. Notably, at least two of the charges remain pending. Therefore, the Court must dismiss Count VI as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

9

## I. Count VII, Defamation

Count VII raises a supplemental defamation claim against all Defendants. The complaint alleges that Defendants made defamatory statements to agents, employers, and the press, knowing they were false.

Under Delaware law, generally, the elements of defamation are: (1) a defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury. *See Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299, 1307 (D. Del. 1994).

In reading the complaint, it is far from clear, which Defendants made the alleged defamatory remarks, when the remarks were made, and/or if the remarks were published. Therefore, Count VII will be dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), but Plaintiff will be given leave to amend.

## J. Count VIII, Monell

Count VIII stated that it is raised against all Defendants, but in reading Count VIII it is evident that it is actually raised only against DSU. Count VIII alleges that DSU developed and maintained policies, practices, and/or customs that were the direct and proximate cause of the alleged violations of Plaintiff's constitutional right.

DSU may only be held liable under § 1983 when the "execution of a government's policy or custom . . . inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).[4] A

---

[4] In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court held that municipalities and other local government entities are "persons" within the meaning of § 1983. The Third Circuit has not explicitly held that a university is analogous to a municipality or local government entity, although other circuits have reached such a conclusion. *See e.g., Goss v. San Jacinto Junior Coll.*, 588 F.2d 96, 98 (5th Cir. 1979); *see also Mauriello v. University of Med. & Dentistry*, 781 F.2d 46 (3d Cir. 1986) (entertaining § 1983 action against University of Medicine and Dentistry of New Jersey).

government policy is established by a "decisionmaker possessing final authority," and a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Id.* (citing *Monell*, 436 U.S. 658 (1978)). Accordingly, a plaintiff seeking to recover under *Monell* must (1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

The complaint does not adequately identify an allegedly unconstitutional policy or custom. Nor has Plaintiff pled that Defendants were the "moving force" behind any alleged constitutional violation. Rather, Count VIII sets forth the elements of a *Monell* claim and then alleges, in a conclusory manner without supporting facts, the alleged liability of DSU.

Therefore, the Court will dismiss Count VIII for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), but will give Plaintiff leave to amend Count VIII.

### K. Count IX, Breach of Contract

Count IX, raised against Williams, Thompson, Chapman, Skelcher, Preston, and Stevenson, alleges a supplemental State-law claim for breach of contract. Count IX alleges that the foregoing Defendants violated the terms of the collective bargaining agreement as well as policies and procedures of DSU in not providing Plaintiff the proper rights guaranteed in the contract.

In order to succeed on a breach of contract claim, Plaintiff must prove the following elements by a preponderance of the evidence: (1) the existence of a contract; (2) that a defendant breached an obligation imposed by the contract; and (3) that Plaintiff incurred damages as a result of the breach. *See VLIW Tech., LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003).

11

It is unclear from the complaint whether the foregoing individual defendants are parties to the collective bargaining agreement at issue.[5] In addition, it may be that Plaintiff also incorporates the terminal contract into the breach of contract claim. As currently pled, Count IX is conclusory and fails to identify all elements of a breach of contract claim. Therefore, the Court will dismiss Count IX for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), but will give Plaintiff leave to amend.

V.     **CONCLUSION**

For the above reasons, the Court will dismiss: (1) the § 1983 claims raised against DSU in Counts I, II, V, and VI, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), as it is immune from suit; (2) the § 1983 claims raised against the individual defendants in their official capacities to the extent that Plaintiff seeks monetary damages, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii); (3) the 42 U.S.C. § 1988 claim as frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); (4) all claims against Skelcher and Holmes for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); (5) Counts I, V, VII, VIII, and IX for failure to state a clam upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and (6) Count III as it is raised solely against individual defendants, the ADA claims in Count IV raised against individual defendants, and Count VI, all pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Since Plaintiff may be able to articulate a claim or claims against Defendant(s), Plaintiff will be given an opportunity to amend Counts I, II, V, VII, VIII, and IX. Plaintiff has stated what appear to be viable claims in Counts II and IV.

An appropriate Order follows.

---

[5]The Court notes that it has been determined that DSU and the American Association of University Professors are parties to a current collective bargaining agreement at DSU with a term from July 1, 2010 through August 31, 2015. *See* n.2, *supra*.

12