# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAHI ISSA,<br><br>      Plaintiff,<br><br>   v.<br><br>DELAWARE STATE UNIVERSITY;<br>HARRY WILLIAMS, individually and in his official<br>capacity; ALTON THOMPSON, individually and in his<br>official capacity; HARRY R. DOWNES, JR., individually<br>and in his official capacity; JUSTIN BUCHWALD,<br>individually and in his official capacity;<br>and DOMINICK CAMPALONE, individually and in his<br>official capacity,<br><br>      Defendants. | Civil Action No. 14-168-LPS |

Katherine R. Witherspoon, Paula C. Witherow, and Anthony N. Delcollo, COOCH AND
TAYLOR, P.A., Wilmington, DE

    Attorneys for Plaintiff Jahi Issa


James D. Taylor, Jr., Gerard M. Clodomir, and Allison J. McCowan, SAUL EWING LLP,
Wilmington, DE

    Attorneys for Defendants Delaware State University, Harry Williams, Alton Thompson,
    Harry R. Downes, Jr., Justin Buchwald, and Dominick Campalone

## MEMORANDUM OPINION

August 4, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

## I.  BACKGROUND

Plaintiff Jahi Issa, Ph.D, was an assistant professor of history and Africana studies in the Department of History, Political Science and Philosophy ("HPSP") at Delaware State University ("DSU" or the "University") in Dover, Delaware.  (D.I. 16 ("Am. Compl.") ¶ 10)  In 2010, Issa applied for a promotion to associate professor.  After a promotion and tenure committee voted to recommend approval of Issa's application, Marshall Stevenson, Jr., the dean of DSU's arts college, overrode that decision and denied Issa the promotion.  (*Id.* ¶¶ 16, 18)  Defendant Harry Williams, DSU's president, similarly informed Issa that he was not recommending Issa for promotion.  (*Id.* ¶ 20)  That same year, two of Issa's HPSP colleagues, both white females, were promoted.  (*Id.* ¶ 21)  Issa, an African-American male, contends that these individuals "were not as qualified" as he was.  (*Id.*)  He generally alleges a history of harassment and discrimination throughout his time at DSU.  (*See, e.g., id.* ¶¶ 22-27, 32-36, 39)

In 2011, Issa was diagnosed with chest pain and post-traumatic stress disorder related to his work at the University.  (*Id.* ¶¶ 35, 38)  He also filed a charge of discrimination with the Delaware Department of Labor on July 15, 2011.  (*Id.* ¶ 41)  Issa applied again for a promotion that September and received a committee recommendation.  (*Id.* ¶¶ 43, 47)  Stevenson and Williams again did not support the recommendation.  (*Id.* ¶¶ 48-49)

On March 1, 2012, Issa attended a protest aimed at the "growing trend in which DSU was abandoning its mission associated with being an HBCU (Historically Black College and University)."  (*Id.* ¶ 52)  Issa alleges that his free speech rights were violated when he was "physically assaulted, injured, and arrested" by Defendants Harry Downes, Jr., the University's

police chief, and Justin Buchwald, a DSU police officer. (*Id.* ¶¶ 54, 56) Issa was transported to a hospital and then arrested and jailed for several hours. A criminal complaint filed by Defendant Dominick Campalone, a DSU police sergeant, charged Issa with offensive touching, resisting arrest, and two counts of disorderly conduct. (*Id.* ¶¶ 58-59) Issa believes he was "specifically targeted by DSU police at the behest of other named Defendants for the purpose of chilling [Issa's] expression of a viewpoint with which other named Defendants disagreed, and as part of a continuing scheme to harass Dr. Issa with malice, in retaliation for his continual filing of grievances with the [U]niversity and due to his filing of charges" with the Equal Employment Opportunity Commission. (*Id.* ¶ 55)

The next day, the University notified Issa that it was investigating the incident and put Issa on paid administrative leave. (*Id.* ¶ 69) On April 1, 2012, Defendant Williams sent Issa a letter of appointment for the 2012-2013 academic year and "Terminal Contract," which Issa accepted "under protest," after DSU rejected an initial "conditional acceptance." (*Id.* ¶¶ 73, 78-81) Issa, citing the criminal proceedings against him, did not meet with DSU regarding its administrative investigation. (*Id.* ¶¶ 84-85) On June 1, 2012, Defendant Alton Thompson, DSU's provost, informed Issa that the University would be "pursuing his termination." (*Id.* ¶ 87) On August 17, 2012, Issa was given a notice of discharge, allegedly in violation of the Collective Bargaining Agreement (CBA) between DSU's Board of Trustees and the University's chapter of the American Association of University Professors. (*Id.* ¶ 91)

None of the four criminal charges filed against Issa resulted in a conviction. The disorderly conduct charge for failure to disperse was dismissed by the trial court for lack of probable cause. (*Id.* ¶ 98) The State dismissed the other disorderly conduct charge, based on

2

offensive language, and the offensive touching charge. (*Id.* ¶¶ 99-100) A trial on the final remaining charge of resisting arrest resulted in a hung jury and was ultimately dismissed by the Court of Common Pleas before a scheduled re-trial (due to concerns over the leaking of confidential jury deliberation information). (*Id.* ¶¶ 101-04)

Issa filed a *pro se* Complaint on February 7, 2014, based on the denial his promotion application, his arrest and the prosecution of the charges arising from that arrest, and his termination from DSU. (*See* D.I. 2) The Court allowed Issa to proceed *in forma pauperis*. (*See* D.I. 4) The Court then screened the Complaint under 28 U.S.C. § 1915(e)(2). On August 11, 2014, the Court issued a memorandum opinion and order dismissing certain claims and giving Issa leave to amend certain others. (*See* D.I. 5, D.I. 6) The case was stayed during the pendency of the criminal case against Issa, and he was provided extensions of time to file an amended pleading. (*See* D.I. 11, D.I. 14)

Issa retained counsel in February 2015 and filed a redrafted Amended Complaint on April 27, 2015. (*See generally* D.I. 16) It asserts 14 claims for relief under state and federal law, including 42 U.S.C. § 1983. On May 26, 2015, Issa filed a motion asking the Court to reconsider its finding of sovereign immunity and dismissal as frivolous of his malicious prosecution claim. (*See* D.I. 21, 22) On April 1, 2016, Williams, Thompson, Downes, Buchwald, and Campalone (together, the "Individual Defendants"), along with the University, moved to dismiss. (D.I. 32) The parties completed combined briefing of the reconsideration and dismissal motions. (*See* D.I. 33, 35, 36) The Court heard oral argument on August 30, 2016. (*See* Tr.)

## II. LEGAL STANDARDS

Evaluating a motion to dismiss under Rule 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, [the] plaintiff is not entitled to relief." *Id.*

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false,"

4

*Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

Although a district court ruling on a motion to dismiss generally "may not consider matters extraneous to the pleadings," there is an exception for documents "integral to or explicitly relied upon in the complaint," which may be considered "without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory*, 114 F.3d at 1426 (internal quotation marks, citations, and punctuation omitted). Courts may also consider "items subject to judicial notice [and] matters of public record." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)

## III. DISCUSSION

Issa asks the Court to reconsider its Eleventh Amendment immunity ruling and dismissal of his malicious prosecution claim. (*See* D.I. 5 at 5-6, 9) Defendants do not appear to vigorously contest this motion on procedural grounds or assert any prejudice; their briefing focuses on the substantive arguments. Because the Court alters its finding on sovereign immunity and dismisses Issa's amended malicious prosecution claim on grounds other than frivolity (*see* below), it will grant Issa's reconsideration motion. Defendants' motion to dismiss will be granted in part and denied in part, as explained in the sections that follow.

### A. Sovereign Immunity

The Court initially ruled that sovereign immunity bars Issa's § 1983 claims against DSU and the Individual Defendants in their official capacities. (*See* D.I. 5 at 5-6) The Court cited, among other cases, *McKay v. Delaware State University*, 2000 WL 1481018, at *10 n.28 (D. Del. Sept. 29, 2000), in finding that DSU is "protected from suit by reason of its Eleventh Amendment immunity." (*Id.* at 5) Issa, citing case law from the Supreme Court of Delaware and

5

the Third Circuit Court of Appeals' test outlined in *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir.1989), urges the Court to vacate this ruling.

The Eleventh Amendment to the U.S. Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Supreme Court has explained that "[a]lthough the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). In fact, a State's sovereign immunity "neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Instead, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." *Id.*

Because Eleventh Amendment immunity is akin to an affirmative defense, Defendants bear the burden of showing its application. *See Christy v. Pennsylvania Tpk. Comm'n*, 54 F.3d 1140, 1146 (3d Cir. 1995). Generally, "[a] state agency is entitled to immunity from suit in a federal court under the eleventh amendment when a judgment against it 'would have had essentially the same practical consequences as a judgment against the State itself.'" *Fitchik*, 873 F.3d at 658 (quoting *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)).

Issa points the Court to *Rogers v. Delaware State University*, 2005 WL 2462271 (Del. Super. October 5, 2005), *aff'd in part and rev'd in part on other grounds*, 905 A.2d 747 (Table),

2006 WL 2085460 (Del. July 25, 2006). In that case, the Superior Court ruled that DSU is not protected by Delaware's sovereign immunity. *See Rogers*, 2005 WL 2462271, at \*2-3. This holding was apparently based on findings that (i) DSU's level of autonomy rendered it "sufficiently independent of State control to be outside the protections offered by sovereign immunity," and (ii) the state legislature waived any immunity that might otherwise apply. *Id.* With regard to waiver, the court cited "[t]he decision by the General Assembly to incorporate DSU, granting the University all the powers and franchises incident to a corporation," which the court held "indicates a specific intent to waive sovereign immunity protection." *Id.* at \*2 (internal quotation marks omitted). On appeal, the Supreme Court of Delaware "agree[d] with and affirm[ed] . . . the Superior Court's well-reasoned opinion" on the sovereign immunity question. *Rogers*, 905 A.2d 747, 2006 WL 2085460 at \*2.[1]

Defendants correctly note that *Rogers* analyzed DSU's sovereign immunity claim under Article I, § 8 of the Delaware Constitution rather than the Eleventh Amendment to our federal Constitution. (D.I. 33 at 12) While Defendants assert that "the two concepts are similar, but not the same" (*id.*), they fail to offer any explanation or cite to any authority suggesting that the

---

[1]The Supreme Court of Delaware issues "[a]ll decisions finally determining or terminating a case . . . by written opinion, or by written order, as determined by the Court." Del. Sup. Ct. R. 17(a). *Rogers* falls into the latter category, but may still be "cited as precedent in unrelated cases . . . and in any other Delaware Court." 1984 Commentary to Del. Sup. Ct. R. 17(a); *see also New Castle Cty. v. Goodman*, 461 A.2d 1012, 1013 (Del. 1983) ("[U]nder a newly amended version of Rule 17(a), litigants before this Court may cite Orders as precedent so long as they comply with the dictates of Rule 14(b)(vi)."). Delaware Supreme Court Rule 17 has been amended since *Goodman* and the 1984 commentary, but the Court sees nothing to indicate the Delaware Supreme Court's intention to overrule *Goodman*. *See generally* Del. Sup. Ct. R. 14(b)(vi)(B)(2) (setting out appropriate practice for citing unreported decisions); *see also First Marblehead Corp. v. House*, 473 F.3d 1, 8 n.7 (1st Cir. 2006) ("We note that Delaware permits the citation of unpublished decisions as precedent.") (citing *Goodman*); *Naghiu v. Inter-Cont'l Hotels Grp., Inc.*, 165 F.R.D. 413, 420 n.2 (D. Del. 1996).

7

federal constitutional analysis is meaningfully different than that applied in *Rogers*. *See generally Alden*, 527 U.S. at 713 ("We have . . . sometimes referred to the States' immunity from suit as 'Eleventh Amendment immunity.' The phrase is convenient shorthand but something of a misnomer . . . ."); *see also Fitchik*, 873 F.2d at 659 (explaining that agency's "status . . . under state law" is factor in "determin[ing] whether eleventh amendment immunity extends to an entity"). Such distinction is even less convincing in light of the *Rogers* holding that the Delaware legislature "specific[ally] inten[ded] to waive" sovereign immunity. *Rogers*, 2005 WL 2462271, at *2.

Even if *Rogers* is put aside, and even if, as Defendants argue, "it is not unusual for an institution to be considered a state agency for one purpose and not another" (D.I. 36 at 9), Defendants fail to meaningfully address the Third Circuit's guidance in *Fitchik*. There, the court considered whether injured railroad workers could sue a subsidiary of the New Jersey Transit Corporation. The court identified the following factors as relevant in determining whether a state agency is protected by sovereign immunity:

(1) Whether the money that would pay the judgment would come from the state (this includes three of the *Urbano* factors – whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);

(2) The status of the agency under state law (this includes four factors – how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and

(3) What degree of autonomy the agency has.

*Fitchik*, 873 F.2d at 659 (internal citation omitted).

8

As counsel for Defendants conceded at oral argument (*see* Tr. at 8), the record at this stage is lacking with respect to the first, "most important" *Fitchik* factor, *id.* ("Although no single *Urbano* factor is dispositive, the most important is whether any judgment would be paid from the state treasury."). The second factor appears to lean in Issa's favor. As the *Rogers* court observed, the University is separately incorporated and can sue or be sued in its own right. *See Rogers*, 2005 WL 2462271, at *2. Ultimately, the decision of Delaware's highest court – which adopted the Superior Court's ruling that the University was ***not*** entitled to sovereign immunity – resolves the issue of DSU's "status . . . under state law." *Fitchik*, 873 F.2d at 659. The third factor, like the first, cannot be properly assessed on this record. But it appears that the statutory framework provides DSU with some degree of autonomy. *See, e.g.*, 14 *Del. C.* § 6503(a) ("[DSU] shall have all the powers and franchises incident to a corporation.").

*McKay*, which this Court cited in its earlier opinion, and which appears to underlie rulings in the other cases on which Defendants rely, predates *Rogers* and does not contain any discussion of the *Fitchik* factors. *See McKay*, 2000 WL 1481018, at *11.

The Court will vacate its earlier ruling, to the extent it dismissed Issa's claims based on sovereign immunity. In doing so, the Court does not rule conclusively on this issue. Based on the status of the record, a definitive ruling in either party's favor on sovereign immunity would be premature. Defendants may raise this defense again on a more complete record.

### B.     Malicious Prosecution

To state a § 1983 claim for malicious prosecution, a complaint must allege that (i) the defendants initiated a criminal proceeding; (ii) the proceeding's outcome was favorable to the plaintiff; (iii) lack of probable cause to initiate the proceeding; (iv) the defendants acted with

malice or for some purpose other than bringing the accused to justice; and (v) the plaintiff suffered a deprivation of liberty akin to a seizure. *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). Issa was charged with four misdemeanors: (1) offensive touching of a law enforcement officer; (2) resisting arrest; (3) disorderly conduct by abusive language; and (4) disorderly conduct by refusal to disperse. The parties disagree as to whether the Amended Complaint's allegations meet the favorable termination and lack of probable cause requirements.

To satisfy the favorable termination requirement, the criminal proceeding "must have been disposed of in a way that indicates the innocence of the accused." *Kossler*, 564 F.3d at 187. Plaintiff's disorderly conduct charge for failure to disperse was dismissed by the trial court for lack of probable cause. (*See* D.I. 34-2, Ex. F ("Docket Sheet") at 5) As Defendants do not seriously contest (*see* D.I. 33 at 13), this is a disposition in Issa's favor that also "indicates [his] innocence." *Id.*

The State dismissed the other disorderly conduct charge and the offensive touching charge for unknown reasons. (*See* Docket Sheet at 5, 9; *see also* Am. Compl. ¶¶ 99, 100; D.I. 33 at 9) Issa contends that the favorable termination requirement is met for these two charges because, among other things, "[t]he Delaware statute dealing with expungement of a criminal record defines a criminal action as being 'terminated in favor of the accused' if all charges related to the case are *nolle prossed* or otherwise dismissed by the court," and therefore "[t]o hold that such actions are not terminations in Dr. Issa's favor would contradict Delaware's legislative intent." (D.I. 35 at 6) (citing 11 *Del. C.* § 4372) He also argues that "a plaintiff may 'attempt to indicate his innocence' [by] demonstrat[ing] 'the formal abandonment of the

10

proceedings by the public prosecutor.'" (D.I. 35 at 6) (quoting *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002) In Issa's view, "[t]he State has never offered any reason, other than presumed innocence, for failing to prosecute Dr. Issa for abusive language and offensive touching, and this subject must be explored in discovery." (*Id.*)

Several cases have explained that dismissals by the state can support varying conclusions depending on the circumstances. *See, e.g., Donahue*, 280 F.3d at 383 ("[A] grant of *nolle prosequi* can be sufficient to satisfy the favorable termination requirement for malicious prosecution, [but] not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably.") (internal quotation marks omitted); *DiFronzo v. Chiovero*, 406 F. App'x 605, 609 (3d Cir. 2011). More specifically, "[a] *nol pros* signifies termination of charges in favor of the accused *only* when their final disposition is such as to indicate the innocence of the accused." *Donahue*, 280 F.3d at 383 (emphasis added). Where the record is silent as to the underlying reasons for the dismissal, the claim will fail. *See Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 426 (D. Del. 2013).[2]

Issa argues that the record's silence does not require dismissal of his malicious prosecution claim. (*See* D.I. 35 at 7) ("Again, here there is no record of whether the orders' language indicated Dr. Issa's innocence. Therefore, the Court should not dismiss at this stage.")) The Court disagrees. While the Court draws inferences in Issa's favor at this stage, the Amended Complaint contains only "bald assertions" that these dismissals of criminal charges were

---

[2]Issa argues that *Glover* is "not applicable" because the plaintiff in that case "conceded that the Court should grant summary judgment on his malicious prosecution claim." (D.I. 35 at 7) But in *Glover* the Court addressed on the merits the issue presented here before noting its recollection that the plaintiff also may have conceded the point at oral argument. *See* 966 F. Supp. 2d at 426 n.3.

resolved in Issa's favor; no factual support is given for how these dismissals could be viewed as indicative of his innocence. *See Morse*, 132 F.3d at 906; *see also* Am. Compl. ¶¶ 99, 100. It is unclear how discovery could further develop the record on this point. Finally, it is not clear to the Court how or why "Delaware's legislative intent," as codified in a statute relating to expungement of criminal records, could be relevant in assessing Issa's claim for malicious prosecution under federal law. (D.I. 35 at 6)

Issa went to trial on the charge of resisting arrest. After a hung jury, the Court of Common Pleas dismissed that charge over concerns about the leaking of confidential jury deliberation information. (*See* Am. Compl. ¶¶ 101-04 ; *see generally* Docket Sheet at 9-10) Neither side cites to any case discussing whether a dismissal under such circumstances could suggest the accused's innocence. But the Court believes that the answer is no. "[T]he termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." *Kossler*, 564 F.3d at 188 (internal quotation marks and emphasis omitted). The Court of Common Pleas's dismissal under the circumstances alleged in the Amended Complaint did not "reflect the merits of the action." *Id.* (internal quotation marks omitted). Nothing in the Amended Complaint or the Docket Sheet suggests otherwise.

Having found that Issa has not adequately alleged the favorable termination of three of the four charges that were brought against him, the Court must address whether a malicious prosecution claim based on the disorderly conduct charge could survive on its own. In *Kossler*, the Third Circuit addressed the question of "[w]hether acquittal on at least one criminal charge constitutes 'favorable termination' for the purpose of a subsequent malicious prosecution claim, when the charge arose out of the same act for which the plaintiff was convicted on a different

charge during the same criminal prosecution." *Id.* *Kossler* observed that "various authorities refer to the favorable termination of a 'proceeding,' not merely a 'charge' or 'offense,'" and concluded that "the favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole." *Id.* (internal citations omitted). Charges will often rise and fall together if they "aim to punish one course of conduct." *Id.* at 192. *Kossler* sets out a two-pronged analysis for the Court to apply: "First, the court must examine the relevant criminal statutes for the charges on their face and second, the court must inquire into the underlying misconduct that the charges aimed to punish." *Jackson v. Nassan*, 2009 WL 2707447, at \*3 (W.D. Pa. Aug. 26, 2009).

The Court of Common Pleas found that there was no probable cause for a disorderly conduct charge based Issa's "refus[al] to comply with a lawful order of the police to disperse." 11 *Del. C.* § 1301. At the same time, the court found probable cause for the charges of offensive touching[3] of a police officer and resisting arrest[4] (*see* Docket Sheet at 5), two charges which did not terminate in Issa's favor for purposes of this discussion. (*See* above) These charges all appear to have stemmed from the same sequence of events on March 1, 2012. This is not a case

---

[3]"A person is guilty of offensive touching when the person: (1) Intentionally touches another person either with a member of his or her body or with any instrument, knowing that the person is thereby likely to cause offense or alarm to such other person; or (2) Intentionally strikes another person with saliva, urine, feces or any other bodily fluid, knowing that the person is thereby likely to cause offense or alarm to such other person." 11 *Del. C.* § 601(a).

[4]"A person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest or detention of the person." 11 *Del. C.* § 1257(b).

that should be treated "as if the plaintiff had [allegedly] committed infractions on two wholly separate occasions." *Piazza v. Lakkis*, 2012 WL 2007112, at *10 (M.D. Pa. June 5, 2012).

Issa's malicious prosecution claim will be dismissed in its entirety.[5]

### C.      Civil Conspiracy to Commit Malicious Prosecution

Defendants contend – and Issa appears to concede (*see* D.I. 35 at 9; Tr. at 19) – that failure to state a claim for malicious prosecution under § 1983 also requires dismissal of Issa's civil conspiracy count based on that claim. (*See* D.I. 33 at 15; D.I. 35 at 9)  The Court agrees and will dismiss this claim. *See Black v. Montgomery Cty.*, 835 F.3d 358, 372 n.14 (3d Cir. 2016, as amended Sept. 16, 2016) ("Because the District Court reasoned that Black could not succeed on her underlying Fourth Amendment malicious prosecution or Fourteenth Amendment due process claims, it correctly determined that she could not succeed on her conspiracy claims.").

### D.      False Arrest and False Imprisonment

In order to state a claim for false arrest and false imprisonment, Issa "must allege that there was an arrest and that the officers did not have probable cause to believe he committed the offense for which he was arrested." *Cannon v. City of Wilmington Police Dep't*, 2012 WL 4482767, at *3 (D. Del. Sept. 27, 2012).  Defendants contend that this claim should be dismissed because the Court of Common Pleas found probable cause with respect to two of the charges against Issa.

Whether the University's police officers had probable cause is a question of fact for the jury. *See, e.g.*, *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998).  The Amended

---

[5]Because the Court's analysis of the favorable termination requirement resolves the motion, the Court need not reach the probable cause issue.

Complaint alleges that Issa did not "assault or intentionally strike out at any police officer, use profanity or abusive language toward any officer, resist arrest or instruct anyone to refuse to disperse." (Am. Compl. ¶ 56) While the police reports may provide a contrary narrative, the Court at this stage must take Issa's allegations in the Amended Complaint as true. Doing so, he has stated a claim on which relief may be granted. Accordingly, Defendants' motion to dismiss the false arrest and imprisonment claim will be denied.

### E.     Americans with Disabilities Act[6]

The Amended Complaint alleges that the University violated the Americans with Disabilities Act, as amended in 2008 ("ADA"), by failing to move Issa's office out of a building where he had allegedly been harassed and mistreated. (*See generally* Am. Compl. ¶¶ 124-29) DSU contends that Issa's ADA claim should be dismissed because the Amended Complaint fails to allege substantial impairment of a major life activity. (*See* D.I. 33 at 16-17) Issa responds by pointing to three paragraphs in the Amended Complaint that he contends "clearly allege[] that [he] was limited, at a minimum, in the major life activity of working." (D.I. 35 at 11-12) These paragraphs include allegations that Issa held office hours in a computer lab rather than his office due to the hostile environment, experienced chest pain and stress related to his employment, and required students to escort him. (*See* Am. Compl. ¶¶ 34, 35, 128)

---

[6]Issa contends that DSU seeks reconsideration of the Court's § 1915(e)(2) screening opinion, in which the Court found that Issa "has adequately alleged an ADA claim against DSU." (D.I. 5 at 9) Issa urges the Court to reject the University's argument on that basis. But Defendants did not have an opportunity to be heard in connection with the screening, which occurred prior to them appearing in the case. Also, while *pro se* pleadings are "liberally construe[d]," *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011, as amended Sept. 19, 2011), counseled pleadings are not. In any event, the Court deems it appropriate to exercise its discretion to consider DSU's challenge to the ADA claim.

In order to allege a disability under the ADA that substantially limits the major activity of working, a plaintiff must plead restrictions in his "ability to perform either a class of jobs or a broad range of jobs." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 763 (3d Cir. 2004) (quoting 29 C.F.R. § 1630.2(j)(3)(I)). As the Amended Complaint lacks any such allegation, the Court will dismiss Issa's ADA claim. The dismissal is without prejudice to Issa having an opportunity to amend his ADA claim, as the Court does not at this time conclude that amendment would be futile.

### F.   Breach of Contract

DSU contends that Issa's breach of contract claim against it must be dismissed because Issa "was a probationary employee without a guaranteed term." (D.I. 33 at 17) For this contention, the University relies on Defendant Williams' April 1, 2012 letter of appointment, which the Amended Complaint refers to as a "Terminal Contract."[7] (Am. Compl. ¶ 73) According to the Amended Complaint, the letter included language indicating that Issa's appointment for the 2012-13 academic year was being made "without prejudice to any rights and decisions DSU may have or make regarding the pending criminal prosecution and/or investigation." (*Id.*) Defendants assert that this means that Issa was "hired for a nine month term contingent on [his] criminal charges." (D.I. 33 at 22) Citing § 10.4.1 of the CBA, they argue that "the CBA's 'just cause' provision [did] not apply" to Issa, as he was "untenured, and . . . in the midst of a probationary period." (D.I. 36 at 4-5)

The Court cannot agree. The CBA, which is in the record as an attachment to defense counsel's declaration (*see* D.I. 34), states in its § 10.4.1, that its protections extend to "tenured

_____

[7]The letter itself is not in the record.

member[s] of the faculty *or any other unit member*" (*see* D.I. 34-1, Ex. A at 55) (emphasis added). Williams' letter cannot have modified the parties' respective rights under the CBA. Moreover, it appears that the "without prejudice" language in the letter was merely intended by DSU to reserve its rights under the CBA. Whether DSU had "just cause" under the CBA to terminate Williams is a factual dispute the Court cannot resolve on the present motion.

DSU contends that the Amended Complaint fails to allege a breach of any duties under the CBA (D.I. 36 at 5), but the Court disagrees. Issa alleges that DSU improperly fired him before the end of his employment term, which he alleges extended to May 25, 2013. (*See generally* Am. Compl. ¶¶ 137-41) Issa asserts that "his exercise of his faculty and personal rights to freedom of speech and freedom of assembly" were the sole basis for his discharge, and could not provide the University with just cause under the CBA. (*Id.* ¶ 141) DSU's reliance on materials outside the record – including "police records, witness statements, and [Issa's] own admissions" (D.I. 33 at 17) – is unavailing at this stage, as the Court cannot take those materials as true where they contradict the Amended Complaint's well-pled factual allegations.

Accordingly, the Court will deny the motion to dismiss Issa's breach of contract claim.

### G. Defamation

Defendant Thompson contends that the defamation claim against him is barred by the qualified common interest privilege. (*See* D.I. 33 at 17-19) This privilege protects "communication . . . between two parties who have a common interest for the protection of which the allegedly defamatory communications are made." *Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299, 1307 (D. Del. 1994) (internal quotation marks omitted). Discussions about the "character or qualifications of an employee or former employee made to any person who has

a legitimate interest in the subject matter" may be within the scope of this privilege. *Id.* (internal quotation marks and punctuation omitted). Thompson argues that the Amended Complaint's allegations are insufficient to invoke the exception for knowingly false statements made with malice. *See generally Wilcoxon v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 437 F. Supp. 2d 235, 247 (D. Del. 2006) ("A conditional privilege must be exercised with good faith, without malice and absent any knowledge of falsity or desire to cause harm.") (internal quotation marks omitted).

The Amended Complaint alleges that Thompson made "statements that he knew to be false," with "bad faith and . . . malice," and that "DSU's ill will toward Dr. Issa" – stemming from Issa's pending "harassment, racial discrimination, and retaliation complaints" – was the "chief motive." (Am. Compl. ¶ 152) The Amended Complaint further alleges that "Provost Thompson and President Williams instructed and/or cooperated with the named DSU police officers in the prosecution of Plaintiff without reasonable suspicion or probable cause." (*Id.* ¶ 115(a); *see also id.* ¶ 145 (incorporating preceding allegations into the defamation count))

The Amended Complaint states a claim for defamation. With respect to this claim, the motion will be denied.

## H. Employment Discrimination

"[A] plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Defendants Williams and Thompson contend that Issa's § 1983 claim against them for

18

employment discrimination fails because Issa has not alleged "purposeful discrimination." (D.I. 33 at 19)[8]

Defendants argue that Issa fails to identify any "similarly situated" individuals to whom he may be pertinently compared. (D.I. 33 at 20) The Court agrees. As Defendants point out, Issa received an unfavorable recommendation from Dean Stevenson with respect to his promotion application, unlike the two HPSP professors whom Issa identifies as "similarly situated" to him. (*See* D.I. 36 at 6) ("Regarding his promotion denial, [Issa] has not identified anyone that the Provost and President recommended for promotion after receiving an unfavorable recommendation from the Dean, as did [Issa].")) Similarly situated individuals are "are alike in all relevant aspects." *Startzell v. City of Philadelphia,* 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks omitted). Similar problems emerge with respect to Issa's allegations with respect to his administrative leave and discharge; he points to perceived inconsistencies in treatment without alleging how he is "alike in all relevant aspects" to those individuals. (*See generally id.* ¶¶ 62, 65-66)

Issa's Fourteenth Amendment claim against Williams and Thompson will be dismissed.

## I.    Retaliation

Counsel for the University withdrew DSU's statute of limitations challenge to Issa's retaliation claim at oral argument. No meritorious basis for dismissal has been identified.

---

[8]Defendants withdrew their statute of limitations challenge to this claim at oral argument. (*See* Tr. at 47)

## J.    Substantive and Procedural Due Process

Defendants Williams and Thompson contend that Issa's § 1983 claim for violations of his substantive and procedural due process rights should be dismissed. They argue that Issa "did not have a constitutionally protected interest in either a promotion or continued employment" at DSU. (D.I. 33 at 20-21) They also argue that Issa "received more than adequate process." (D.I. 33 at 21)

Defendants characterize Issa as a purely at-will employee with no expectation of continued employment for the duration of his terminal contract. (*See* D.I. 33 at 21) ("Probationary employees are considered employees at will and, therefore, have no property interest in their employment.") (quoting *Bartal v. Borough of Laureldale*, 283 F. App'x 69, 71 (3d Cir. 2008)) However, as already explained in connection with Issa's breach of contract claim, the Court cannot conclude at this stage that Issa's employment status was such as to exempt him from the CBA's protections. Instead, taking the well-pled factual allegations in the Amended Complaint as true, Issa was not merely a probationary employee at the time of his termination.

Defendants further contend that Issa "received far more than the required [procedural] due process for both the promotion denial and his termination." (D.I. 33 at 22) Issa disputes that he had sufficient "opportunity to be heard" under the circumstances. (D.I. 35 at 17) Williams and Thompson point to the Amended Complaint's allegations that Issa submitted a written statement and was given the chance to be a part of DSU's administrative investigation. (*See* D.I. 36 at 7) (citing Am. Compl. ¶¶ 77, 82-85) But the Amended Complaint also alleges that a "pre-disciplinary meeting" with Thompson did not take place as scheduled despite Issa's presence

20

with his attorney (*see* Am. Compl. ¶ 91), and that the University "made no efforts to select an arbitrator and proceed with the [post-discharge] hearing, in violation of the CBA" (*id.* ¶ 95).

The only case Defendants cite in support of their argument, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), does not provide detailed guidance on how to assess what process is due in a particular circumstance. Also, Defendants fail to address Issa's allegation regarding the University's shortcomings with respect to the post-discharge process.

Taking the well-pled factual allegations of the Amended Complaint as true, the Court will deny Defendants' motion to dismiss the due process claims.

### K.    Title VII Claims

Before bringing a Title VII action, plaintiffs must file a charge with the Equal Employment Opportunity Commission (EEOC) and obtain a right to sue letter. *See Tani v. FPL/Next Era Energy*, 811 F. Supp. 2d 1004, 1018 (D. Del. 2011) (citing 42 U.S.C. § 2000e–16(c)). The University contends that Issa's Title VII claims (*see* Am. Compl. Counts X-XII) against it must be dismissed for failure to adequately plead exhaustion of administrative remedies. The Court agrees.

The Amended Complaint alleges that Issa filed a charge with the Delaware Department of Labor in July 2011. (Am. Compl. ¶ 41) It does not explicitly allege that he opted to have that claim cross-filed with the EEOC – although there are references to charges filed with the EEOC. (*See, e.g., id.* ¶¶ 44, 55)[9] Issa did not include a right-to-sue letter issued by the EEOC as an attachment to the Amended Complaint; nor does the Amended Complaint inform the Court of

---

[9]Issa's *pro se* Complaint also referred to a second charge filed in November 2012. (*See* D.I. 2 ¶ 78; *id.* at 26 of 26)

the charges' nature and scope. This is important because "[t]he ensuing suit [after an EEOC charge] is limited to claims that are within the scope of the initial administrative charge." *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413-14 (3d Cir. 2010).

On this record, the Court cannot determine whether Issa exhausted his administrative remedies and, if so, the permissible scope of Issa's Title VII claims. Those counts will be dismissed without prejudice, and Issa will have leave to amend his pleading.[10]

### L.    Tortious Interference

Issa asserts a claim for tortious interference with his employment contract with DSU. (*See* Am. Compl. ¶¶ 188-92) Defendants contend that this claim must be dismissed because "a party to a contract cannot tortiously interfere with that very same contract." (D.I. 33 at 24) (quoting *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 531 (D. Del. 2012)) The Court agrees.

The Amended Complaint alleges tortious interference by "all Defendants." (Am. Compl. at 39) As a contracting party (*see id.* ¶ 189), the University itself cannot be a proper defendant. *See Kuhn*, 844 F. Supp. 2d at 531.

Turning to the Individual Defendants, "where an entity under the control of a contracting party is used by that party as an instrument to breach the contract, it is improper to accord it separate status as a tortfeasor." *Grunstein v. Silva*, 2009 WL 4698541, at *16 (Del. Ch. Dec. 8, 2009). The Amended Complaint alleges that certain Individual Defendants, within scope of their

---

[10]At oral argument, counsel for Issa provided Defendants and the Court with copies of two right-to-sue letters and told the Court that Issa and his attorneys were working to find and/or obtain other relevant documents. Issa had apparently lost some of his records due to a period of homelessness.

22

DSU employment and as part of a conspiracy with members of the University's administration, arrested and maliciously prosecuted Issa in order to provide a pretext for his termination. (*See, e.g.*, Am. Compl. ¶ 191) In other words, Issa alleges a contracting party's use of an entity under that party's control as an instrument. This fails to state a claim for tortious interference. Nor has Issa alleged a plausible claim that any Individual Defendants acted maliciously and beyond the scope of their employment.

Issa's tortious interference claim will be dismissed.

### M. *Monell* Claim

The University contends that Issa's *Monell* claim (*see* Am. Compl. Count XIV) must be dismissed due to (among other reasons) Issa's failure to plead wrongdoing deriving from an "official practice or policy of the University." (D.I. 36 at 9) The Court agrees with DSU. The Amended Complaint does not adequately allege any "official policy or custom" underlying the alleged wrongs. *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1059 (3d Cir. 1991) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)). There is no allegation that any state official's practice was "so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* (internal quotation marks omitted). Issa's *Monell* claim will be dismissed.

### IV. CONCLUSION

For the reasons given above, Issa's motion for reconsideration (D.I. 21) will be granted and Defendants' motion to dismiss (D.I. 32) will be granted in part and denied in part. An appropriate Order follows.