# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAHI ISSA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 14-168-LPS |
| | : | |
| DELAWARE STATE UNIVERSITY, | : | |
| HARRY WILLIAMS, ALTON THOMPSON | : | |
| HARRY DOWNES, JR., JUSTIN | : | |
| BUCHWALD, and DOMINICK CAMPALONE, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM ORDER

At Wilmington this **26th** day of **April, 2019**:

Having reviewed the proposed final pretrial order ("PTO") (D.I. 156) filed by Plaintiff Jahi Issa ("Issa" or "Plaintiff") and Defendants Delaware State University ("DSU"), Harry Williams, Alton Thompson, Harry Downes, Jr., Justin Buchwald, and Dominick Campalone ("Defendants"), **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion *in limine* ("MIL") No. 1, to exclude Plaintiff's records from and references to Plaintiff's previous employment at Elizabeth City State University ("ECSU"), is DENIED. Defendants offer this evidence for proper non-propensity purposes: most especially to counter Plaintiff's contention that Defendants were the cause of his alleged post-traumatic stress disorder ("PTSD") ("This evidence is highly probative of his claim that he developed PTSD as a result of on-going race-based harassment at DSU.") (PTO Ex. B-2 at 1 n.1), and also as support for Defendants' position that Plaintiff's allegations are part of a common scheme or plan ("If an

1

adverse action is taken against him, he alleges racism.") (*id.* at 1). While admission of this evidence does bring with it a risk of unfair prejudice, confusion of the jury, and waste of time,[1] these concerns do not substantially outweigh the probative value of the evidence. Additionally, any party may propose that the Court provide the jury a limiting instruction at or around the time of admission of the ECSU evidence and/or as part of the final jury instructions.

2. Plaintiff's MIL No. 2, to exclude any mention or reference to "other videos" that were not produced during discovery, is DENIED. The Court is not persuaded by Plaintiff's contention that the jury will somehow hold it against him that the "other videos" are not being presented to them. The parties have factual disputes relating to the "other videos," including whether they ever existed, what they depicted, who viewed them, and the extent to which (if at all) they genuinely contributed to the decisions made with respect to Plaintiff's employment. The jury will be assisted in fulfilling its obligations by hearing the contested evidence from both sides on these and related issues. More importantly, the Court does not see how it could provide a fair trial to all parties – and one that would permit the jury to decide the issues it will be presented – by trying to excise all or many of the multiple references to "other videos" contained in the record.

As to whether one or more Defendants had an obligation to preserve videos that were at one time publicly available (e.g., on social media platforms and the internet), and equally accessible to all parties to this case, and which purportedly formed a basis for the employment-related decisions that are at issue in this case, neither side has presented adequate briefing.

---

[1] The Court will not permit Defendants to use this (or any evidence) to "annoy, harass, or embarrass Dr. Issa." (PTO Ex. B-1 at 2)

Should any party request that the Court instruct the jury on this point,[2] it will have to make a timely proposal supported by argument and any pertinent authority.[3]

3. Plaintiff's MIL No. 3, to exclude records from and references to Plaintiff's custody and family court proceedings, is unopposed and GRANTED.

4. Defendants' MIL No. 1, to exclude evidence of the disposition of the criminal proceedings, will be argued at today's pretrial conference ("PTC").

5. Defendants' MIL No. 2, to exclude the evidence of the Public Employee Relations Board proceedings and adjudications, is DENIED AS MOOT. (*See* D.I. 166 at ¶ 2)

6. Defendants' MIL No. 3, to exclude evidence of surveillance cameras, is DENIED for many of the same reasons as the Court denied Plaintiff's MIL No. 2. Again, the Court does not see how it could provide a fair trial to all parties – and one that would permit the jury to decide the issues it will be presented – by trying to excise all or many of the multiple references to "other videos" contained in the record, including those "other videos" that Plaintiff

---

[2] For example: "You have heard evidence that other videos besides those shown to you in this trial may have existed and may have been considered as part of Defendants' decision-making process with respect to Plaintiff's employment. Should you find that such videos existed and were considered by Defendants, you [may/must] find that Defendants [did/did not] have an obligation to preserve such videos from the time they anticipated litigation with Plaintiff."

[3] This decision is consistent with the Court's decision from the bench at the April 8, 2019 hearing denying Plaintiff's motion for spoliation sanctions. (*See* D.I. 153 at 100) There the Court found that Plaintiff had failed to prove by a preponderance of the evidence that "other videos" existed "that were in the control of the defendants at any time and that were destroyed and/or not preserved." (*Id.* at 100) That factual finding does not necessarily preclude a legal conclusion that if "other videos" not strictly "in the control of defendants" existed in the public domain and were relied on by Defendants then Defendants may have had a duty to preserve. At the April 8 hearing the Court expressly invited the parties to present the dispute over "other videos" as a motion *in limine*, notwithstanding its denial of the motion for spoliation sanctions. (*See id.* at 102)

3

characterizes as "surveillance videos" that may (or may not) have been captured by cameras placed on the DSU building at and around where the March 1, 2012 incident occurred. It is not clear to the Court that the degree of "speculation" required to make a finding (i.e., a chain of reasonable inferences from evidence that will be presented)[4] that "surveillance videos" capturing relevant material once existed is materially greater than the degree of "speculation" required to make the finding Defendants evidently will seek that some unspecified "other videos" showed Plaintiff "hit," "shove," or otherwise act aggressively toward police on March 1, 2012. *See generally* PTO Ex. G Pl's Resp. at 1 ("Defendants created this whole sideshow by claiming the existence of 'other videos' that were not produced in this litigation in order to bolster their false claim that there was video evidence of the alleged 'hit' that formed the basis for Dr. Issa's arrest.").[5]

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[4]The record includes evidence that DSU had a surveillance system (including multiple video cameras) in place on March 1, 2012, with cameras operating in the vicinity of the protest and Plaintiff's arrest; that Defendants have touted the quality of their surveillance system; and that Defendant Downes provided testimony which may be understood as indicating that he viewed "surveillance" videos.

[5]In quoting this sentence, the Court means only to highlight the fairness, logic, and necessity of permitting both sides to make their desired references to "other videos," including "surveillance" videos. The Court, of course, is not suggesting it has concluded that any of Defendants' (or Plaintiff's) claims are "false."

4